**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____

IN RE:
PIHL, INC.                                                   Chapter 7
        DEBTOR.                                              Case No. 13-15575-WCH


_____


KATHLEEN P. DWYER, CHAPTER 7
TRUSTEE,
        PLAINTIFF,

v.                                                           Adversary Proceeding
                                                             Case No. 13-01384

THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA, AMERICAN
INTERNATIONAL COMPANIES, AND
MIDDLESEX SAVINGS BANK,
        DEFENDANTS.


_____


**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

        The matters before the Court are the "Motion for Partial Summary Judgment Against

Defendants" (the "Trustee Motion"), filed by Kathleen P. Dwyer (the "Trustee"), the plaintiff

and Chapter 7 trustee (the "Trustee") of the estate of Pihl, Inc. (the "Debtor"), the "Opposition of

the Insurance Company of Pennsylvania and American International Companies to the Plaintiff's

Motion for Partial Summary Judgment" (the "Defendants' Opposition"), filed by defendants The

Insurance Company of the State of Pennsylvania ("ICSP") and American International

Companies ("AIC") (collectively, the "Defendants"), ICSP's "Motion for Summary Judgment"

(the "ICSP Motion"), and the Trustee's "Opposition to Motion for Summary Judgment" (the

1

"Trustee's Opposition").  Through the Trustee Motion, the Trustee seeks: (1) turnover of funds held by a third defendant, Middlesex Savings Bank (the "Bank"), pursuant to 11 U.S.C. § 542; (2) avoidance of a UCC-1 financing statement (the "First Transfer") that AIC filed on September 16, 2013, as a preferential transfer pursuant to 11 U.S.C. § 547; (3) recovery and preservation of the value of the First Transfer pursuant to 11 U.S.C. §§ 550 and 551; (4) avoidance of a Writ of Attachment (the "Second Transfer") ICSP filed on September 20, 2013, pursuant to 11 U.S.C. § 547; and (5) recovery and preservation of the value of the Second Transfer for the Debtor's estate pursuant to 11 U.S.C. §§ 550 and 551.  ICSP, through the ICSP Motion, seeks a declaration that the Bank funds are not property of the estate and turnover of those funds to ICSP.  For the reasons set forth below, I will deny both motions.

## II. <u>BACKGROUND</u>

Pursuant to Local Rule 56.1 of the United States District Court for the District of Massachusetts,[1] the Trustee filed a "Statement of Undisputed Facts in Support of Motion for Partial Summary Judgment against the Defendants"[2] (the "Trustee's Statement of Facts"), and ICSP filed a "Concise Statement of Facts In Support Of Its Motion for Summary Judgment" [3] (the "ICSP Statement of Facts," collectively, the "Statements of Fact").  The Trustee filed a response to the ICSP Statement of Facts[4] and ICSP filed a response to the Trustee's Statement of Facts.[5]

---

[1] Adopted and made applicable to proceedings in the Bankruptcy Court by MLBR 7056-1; *see In re Albright*,  No. 11–20457–WCH,  2013 WL 6076696 *1(Bankr. D. Mass. Nov. 19, 2013).

[2] Trustee's Statement of Facts, Docket No. 61.

[3] ICSP Statement of Facts , Docket No. 41.

[4] Trustee Response, Docket No. 74.

[5] ICSP Response, Docket No. 76.

The Debtor is in the business of construction contracting and specializes in civil engineering projects.[6]  It is a wholly owned subsidiary of E. Phil and Son, A/S, an international contracting and civil engineering company based in Denmark.[7]   ICSP is in the business of issuing performance and payment contract surety bonds.[8]  ICSP is a subsidiary of American International Group ("AIG").[9]  AIC is also an affiliate of AIG.[10]

On or around January 12, 2006, the Debtor executed a written indemnity agreement (the "Indemnity Agreement") with ICSP in contemplation of ICSP issuing the Debtor surety bonds.[11] The Indemnity Agreement stated that the Debtor will exonerate and indemnify ICSP from and against any liability for losses and expenses that ICSP might sustain because it executed surety bonds for the Debtor.[12]   The Indemnity Agreement also contained a provision purporting to assign, as security, certain property belonging to the Debtor.  The provision read as follows:

> The Principals, the Indemnitors hereby consenting, will assign, transfer and set over, and do hereby assign, transfer, and set over to the Surety, as collateral, to secure the obligations in any and all of paragraphs of this Agreement . . . but only in the event of (1) any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any breach of said Bonds; . . . (a) All of the rights of the Principals in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds; . . . (e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Principal has an interest.[13]

---

[6] ICSP Statement of Facts, Docket No. 41 at ¶ 2.

[7] *Id.* at ¶ 3.

[8] *Id.* at ¶ 1.

[9] *Id.* at ¶ 1.

[10] Complaint, Docket No. 1 at ¶ 2-3; ICSP and AIC Answer, Docket No. 24 at ¶ 2-3.

[11] ICSP Statement of Facts, Docket No. 41 at ¶ 4.

[12] *Id.* at ¶ 5.

[13] Exhibit A, Docket No. 43 at 1-2.

On October 19, 2009, E. Pihl & Son executed a counterindemnity agreement (the "Counter Indemnity Agreement") in favor of AIG.[14]  The Counter Indemnity Agreement defined AIG as including ICSP[15] and was similar in substance to the Indemnity Agreement.[16]  The Defendants have not explained the relevance of the Counter Indemnity Agreement.

Following the execution of the Indemnity Agreement and Counter Indemnity Agreement, ICSP issued performance and payment bonds as follows:[17]

| Project | Bond Amount | Owner/Obligee | Bond Issue Date & Bond Number |
|---|---|---|---|
| Nahant Beach Reservation Reconstruction | $17,451,608.70 | Massachusetts Department of Conservation and Recreation ("DCR") | April 29, 2010<br><br>#29-53-74 |
| Willimansett Bridge Deck and Replacement (the "Willimansett Bridge Project") | $19,257,704.00 | Massachusetts Department of Transportation ("DOT") | April 26, 2011<br><br>#29-53-75 |
| General Edwards Drawbridge Rehabilitation | $8,618,407.00 | DOT | June 29, 2011<br><br>#29-53-76 |

The Defendants claim that they began receiving bond payment claims on each of the above projects (collectively, the "Bonded Projects") with increasing frequency at the end of 2011.[18]  According to the Defendants, these claims continued through 2012 and 2013.[19]  On or

---

[14] ICSP Statement of Facts, Docket No. 41 at ¶ 7.

[15] *Id*.

[16] *Id*. at ¶ 7-8.

[17] *Id*. at ¶ 9; Exhibit C, Docket No. 45; Trustee's Statement of Facts, Docket No. 61 at ¶ 11.

[18] ICSP Statement of Facts, Docket No. 41 at ¶ 11.

[19] *Id*.

Case 13-01384   Doc 86   Filed 04/14/15   Entered 04/14/15 11:49:42   Desc Main
Document     Page 5 of 22

around June 14, 2012, a subcontractor sued the Debtor and ICSP.[20]   The subcontractor claimed

that the Debtor failed to make payments for the Willimansett Bridge Project and sought to

recover on the payment bond ICSP issued.[21]   The outcome of that action is not on the record

before me.   On or around August 26, 2013, E. Pihl and Son filed for bankruptcy protection in

Denmark.[22]

ICSP states that on September 12, 2013, an employee of the Debtor informed ICSP the

Debtor would not complete the Bonded Projects due to E. Pihl & Son's bankruptcy.[23]   On the

same day, the Debtor terminated all of its employees and ceased operations.[24]   ICSP mailed the

Debtor a letter reminding it of its obligations pursuant to the Indemnity Agreement on September

13, 2013.[25]   On September 16, 2013, AIC filed a UCC-1 financing statement with the Secretary

of the Commonwealth of Massachusetts.[26]   The financing statement purported to take an interest

in substantially the same collateral as described in the assignment provision of the Indemnity

Agreement.[27]

On September 17, 2013, ICSP sent the Debtor a letter demanding $1,072,804 in collateral

security, an amount based on ICSP's understanding of its potential exposure on the bonds at that

---

[20] *Id.* at ¶ 12.

[21] *Id.*

[22] *Id.* at ¶ 13.

[23] *Id.* at ¶ 17.

[24] *Id.*

[25] *Id*. at ¶ 19.

[26] Complaint, Docket No. 1at ¶ 12; Answer, Docket No. 24 at ¶ 12.

[27] Complaint, Docket No. 1, Exhibit B.

time.[28]    As of September 17, 2013, the Debtor had a balance of $680,814.91 at the Bank,

comprised of $289,386.17 (the "Pre-Existing Balance") deposited prior to that date and a

payment of $391,428.74 (the "September Payment") received that day from the Commonwealth

of Massachusetts.[29]

On September 18, 2013, in a letter to the Debtor, the DOT declared "[the Debtor] is in

default of the [Willimansett Bridge Project] contract.  Work on the contract has apparently

stopped as of Friday, September 13, 2013."[30]  That same day, the DOT sent the Debtor a letter

stating "[the Debtor] is in default of the [General Edwards Drawbridge Rehabilitation] contract.

Work on the contract has apparently stopped as of Friday, September 13, 2015."[31]

Also on September 18, 2013, ICSP commenced an action in the United States District

Court for the District of Massachusetts (the "District Court") against the Debtor and the Bank.[32]

ICSP filed an ex parte motion in the District Court for a trustee process on the same day.[33]  On

September 19, 2013, the District Court approved the Writ of Attachment, which was served on

the Bank.[34]  The Bank filed an answer indicating that it held $680,814.91 in accounts in the

Debtor's name.[35]

---

[28] ICSP Statement of Facts, Docket No. 41 at ¶ 24.

[29] *Id.* at ¶¶ 33 and 75; Trustee's Statement of Facts, Docket No. 61 at  ¶ 23.

[30] ICSP Statement of Facts, Docket No. 41 at ¶ 27; Exhibit G, Docket No. 49.

[31] Exhibit H, Docket No. 50.

[32] ICSP Statement of Facts, Docket No. 41 at ¶ 32.

[33] *Id*.

[34] Exh. K, Docket No. 53.

[35] ICSP Statement of Facts, Docket No. 41 at ¶ 33.

On September 20, 2013, the Debtor filed a voluntary Chapter 7 petition in this court.[36]
The Debtor listed $682,893.13 in accounts at the Bank on its schedules of assets and liabilities.[37]
On October 23, 2013, I approved a stipulation in the lead case in which the Trustee rejected
certain executory contracts, including those for the Bonded Projects.[38]

On October 2, 2013, the Trustee filed the present adversary proceeding.[39]  Through her
Complaint, the Trustee sought turnover of the Pre-Existing Balance and September Payment
(collectively, the "Funds"), avoidance of the First and Second Transfers (collectively, the
"Transfers"), recovery and preservation of the value of the Transfers, and a preliminary
injunction ordering immediate turnover of funds in the Bank.[40]  After a hearing held on October
8, 2013, I denied the Trustee's Emergency Motion for Preliminary Injunction ("Motion for
Preliminary Injunction").[41]  The Bank filed an Answer to the Complaint (the "Bank's Answer")
on October 30, 2013,[42] while the Defendants together filed their Answer (the "Defendant's
Answer")[43] on November 1, 2013.  On November 7, 2014, the parties filed the ICSP Motion[44]
and the Trustee Motion,[45] seeking summary judgment, with one exception, on all of the
remaining counts.  The Trustee reserved her rights and defenses as to the September Payment for

---

[36] *Id*. at ¶ 34.

[37] Trustee's Statement of Facts, Docket No. 61 at ¶ 2.

[38] *See* Case No. 13-15575, Docket No. 29.

[39] Complaint, Docket No. 1.

[40] *Id*. at 6-9.

[41] Motion for Preliminary Injunction, Docket No. 14.

[42] Bank's Answer, Docket No. 22.

[43] Defendant's Answer, Docket No. 24.

[44] ICSP Motion, Docket No. 40.

[45] Trustee Motion, Docket No. 59.

trial.[46]  On December 9, 2014, the parties filed their respective oppositions.[47]  I held a hearing on December 17, 2014, and, at its conclusion, took the matter under advisement.

## III. POSITIONS OF THE PARTIES

### A. The Defendants

The Defendants take the position that the Funds held by the Bank are not property of the estate.  They advance three theories: (1) that ICSP has equitable subrogation rights in the Funds as proceeds of bonded contracts; (2) that the Debtor assigned the Funds to ICSP through the Indemnity Agreement; and (3) that the Bank holds the Funds in a constructive trust for the Defendants.  They request an order directing the Bank to turn the Funds over to ICSP.

First, the Defendants claim that the Funds are proceeds of the bonded contracts, and that ICSP has equitable subrogation rights that have matured and entitle it to those proceeds.  The Defendants contend that no formal declaration of default was required for their rights to mature.  They state that any of several events, including the Superior Court action, E. Pihl & Son's bankruptcy, and the Debtor's statement to ICSP that it would not complete any of the Bonded Projects, constitute a default and caused ICSP's equitable subrogation rights to mature.  Furthermore, according to ICSP, its subrogation rights date back to when the suretyship was first established.  Additionally, ICSP argues that its equitable subrogation rights extend to funds derived from the contracts that are in the hands of its principal, meaning the Debtor.  The Defendants believe that the Funds therefore never became property of the estate, and that ICSP accordingly has a claim to the Funds superior to the claim of the Trustee.

---

[46] Memorandum of Law in Support of Motion for Partial Summary Judgment Against Defendants, Docket No. 60, n.1.

[47] Trustee's Opposition, Docket No. 73 and  Defendant's Opposition, Docket No. 75.

Second, the Defendants believe the Funds are not property of the estate because the Debtor assigned the funds to ICSP through the assignment provision in the Indemnity Agreement.

Finally, the Defendants argue that the Bank merely holds the funds in constructive trust for ICSP. They claim that Mass. Gen. Laws ch. 30 § 39F requires departments of the state government that hire general contractors to make payments to the general contractor, who then pays any subcontractors. The Defendants assert that this creates a statutory obligation for the general contractors, such as the Debtor, to pay subcontractors and suppliers. They argue that allowing the Debtor, and, in turn, the bankruptcy estate, to have the funds would unjustly enrich the Debtor. Therefore, according to the Defendants, the bank is a constructive trustee of the Pre-Existing Balance and the September Payment. Accordingly, the Defendants assert that I should grant summary judgment for ICSP and deny summary judgment to the Trustee.

B. The Trustee

The Trustee argues that any equitable subrogation rights ICSP has do not extend to the Pre-Existing Balance at the Bank. She contends that a surety is only subrogated to a principal when the surety makes a payment as a result of default and only for amounts remaining to be paid pursuant to a bonded contract. According to the Trustee, a surety is not subrogated to funds earned and paid to a contractor, such as the Debtor. She argues that funds that a debtor-contractor earns and receives prior to default are property of the estate, and therefore, equitable subrogation rights of a surety do not divest the estate of such funds.

The Trustee disagrees that the Indemnity Agreement effected an assignment of the Debtor's rights pursuant to its contract with the Defendants. The Trustee contends AIC's filing of a financing statement after the Debtor purportedly breached the Indemnity Agreement

9

demonstrates that the parties' intent was to create a security interest rather than an outright assignment.  Even if the Indemnity Agreement did create an outright assignment, the Trustee argues it did not include the Pre-Existing Balance because those funds were not named in the granting clause.  Additionally, she contends, an assignment requires the assignee to have a control agreement with the assignor or to have possession of the funds.  AIC and ICSP had neither.  Therefore, the Trustee posits that no assignment was created.

The Trustee argues that the funds were not subject to a constructive trust.  She states that in Massachusetts, a constructive trust requires fraud, and the Defendants have not made any allegations of fraud against the Debtor.  Additionally, Massachusetts law does not impose a statutory constructive trust for contractors who breach obligations to subcontractors.  Accordingly, the Trustee contends, the Funds are not subject to a constructive trust.

The Trustee also argues that she may avoid both Transfers pursuant to 11 U.S.C. § 547(b).  First, both Transfers were made for the benefit of the Defendants on account of an antecedent debt.  Second, the Trustee notes that she is entitled to a presumption of insolvency and alleges that the Defendants have not produced any evidence to rebut the presumption.  Third, the First and Second Transfers occurred within the ninety-day pre-petition period.  Finally, the Trustee believes that the First and Second Transfers enabled the sureties to receive more than they would have if the transfers had not been made and AIC and ICSP received payment only to the extent provided in the Bankruptcy Code.  Therefore, the Trustee argues that I should grant the Trustee Motion in her favor and deny the ICSP Motion.

## IV. DISCUSSION

From the outset, I note that the Defendants argue that I have already ruled in their favor on the merits of the Complaint at the hearing on the Trustee's Emergency Motion for

10

Preliminary Injunction on October 8, 2013.  Concluding that the Trustee had not satisfied her

burden for a preliminary injunction, I stated "[a]s to equitable subrogation, I think the

[Defendant] has the better of it."[48]  The Defendants are, however, reading too much into my

statement.

> The United States Supreme Court has held that a party seeking a preliminary injunction
>
> must establish that he is likely to succeed on the merits, that he is likely to suffer
> irreparable harm in the absence of preliminary relief, that the balance of equities
> tips in his favor, and that an injunction is in the public interest.[49]

The United States Court of Appeals for the First Circuit has elaborated, holding that "[t]he sine

qua non of this four-part inquiry is likelihood of success on the merits."[50]  My decision to grant

or deny a preliminary injunction "must be supported by adequate findings of fact and

conclusions of law."[51]  Accordingly, ruling on the Trustee's motion necessitated a determination

of whether the Trustee was likely to succeed on the merits.

While findings of fact and conclusions of law made when deciding a motion for a

preliminary injunction may be preclusive, "the general rule [is] that issue preclusion attaches

only when an issue of fact or law is actually litigated and determined by a valid and final

judgment."[52]  "Preliminary injunction findings may have preclusive effect 'if the circumstances

make it likely that the findings are 'sufficiently firm' to persuade the court that there is no

---

[48] Transcript, Docket No. 19 at 21:16-17.

[49] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[50] *Air Line Pilots Ass'n, Int'l v. Guilford Transp. Indus., Inc.*, 399 F.3d 89, 95 (1st Cir. 2005) (*quoting New Comm Wireless Services, Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002)).

[51] *TEC Eng'g Corp. v. Budget Molders Supply, Inc.*, 82 F.3d 542, 545 (1st Cir. 1996); *see* Fed. R. Civ. P. 52(a)(2).

[52] *Bowers v. City of Phila.*, No. 06-3229, 2008 WL 5234357, *3 (E.D. Pa. December 12, 2008) (*quoting Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S.P.S.,* 272 F.3d 182,189 (3d Cir. 2001)).

compelling reason for permitting them to be litigated again.'"[53]   Whether the findings are sufficiently firm depends on numerous factors, including "whether the parties were fully heard, whether the court filed a reasoned opinion, and whether that decision could have been, or actually was appealed."[54]   At the time of the hearing on the Motion for Preliminary Injunction, the parties had not submitted many of the documents and pleadings that are now before me.   I ruled from the bench based on my preliminary assessment of the case without drafting a thorough decision.   In this case, my statement was not "sufficiently firm" to have any bearing on the determination of the present motions.

A.   The Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[55]   A dispute is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the non-moving party.[56]   "At the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[57]   A fact is material if it has the potential to determine the outcome of the suit under the governing law.[58]   The moving party bears the initial burden of demonstrating that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

---

[53] *Id.* at *4 (*quoting Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 474 n.11 (3d Cir. 1997).

[54] *Id.* at *5.

[55] Fed. R. Civ. P. 56(a), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

[56] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[57] *Id.* at 249.

[58] *Id.*

12

is no genuine issue as to any material fact."[59]   Additionally, the moving party must produce evidence sufficient to meet "the substantive evidentiary standard of proof that would apply at the trial on the merits."[60]   "[T]he mere existence of a scintilla of evidence will be insufficient."[61] Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[62]   The Supreme Court has held "[there is] no express or implied requirement . . . that the moving party support its motion with . . . materials *negating* the opponent's claim."[63]

### B. 11 U.S.C. § 542(a)

Section 542(a) of the Bankruptcy Code requires, in part, that "an entity . . . in possession . . . of property that the trustee may use, sell, or lease . . . shall deliver to the trustee . . . such property."[64]   A trustee is entitled to turnover of property of the estate, which is defined in 11 U.S.C. § 541(a)(1) as "[a]ll legal or equitable interests of the debtor in property as of the commencement of the case."[65]   Thus, if the Debtor has a legal or equitable interest in the Funds, the Bank must turn them over to the Trustee.   If the Debtor does not have any legal or equitable interest in the funds in light of the Defendants' equitable subrogation rights, the assignment provision, or a constructive trust, the Trustee is not entitled to turnover.

---

[59] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[60] *Anderson*, 477 U.S. at 252.

[61] *Id.*

[62] *Celotex*, 477 U.S. 317 at 322.

[63] *Id.* at 323 (emphasis in original).

[64] 11 U.S.C. § 542(a).

[65] 11 U.S.C. § 541(a)(1).

1. Equitable Subrogation

Equitable subrogation occurs when "one party by virtue of its payment of another's obligation, steps into the shoes of the party who was owed the obligation for the purposes of getting recompense for its payment."[66]   A surety "may stand in the shoes of either (1) the contractor whose obligations are discharged, (2) the owners to whom it was bound, or (3) the subcontractors whom it paid."[67]

In Massachusetts, a party must prove the following five factors for subrogation to apply:

> (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder.[68]

Equitable subrogation is a "broad equitable remedy" and "may apply even where one or more of these factors is absent."[69]   Additionally, courts have held that that sureties with equitable subrogation rights are not entitled to progress payments made to a contractor, that is, funds earned by a contractor prior to its default and paid to the contractor pre-petition.[70]   Nevertheless, equitable subrogation does entitle sureties to contract retainages[71] and progress payments that

---

[66] *In re N. Am. Rubber Thread Co. Inc.*, 333 B.R. 164, 168 (Bankr. D. Mass. 2005).

[67] *Canter v. Schlager*, 358 Mass. 789, 794 (1971) (*citing Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 141 (1962)).

[68] *East Bos. Sav. Bank v. Ogan*, 428 Mass. 327, 330 (Mass. 1998).

[69] *Id.*

[70] *See, e.g., Nat'l Shawmut Bank of Bos. v. New Amsterdam Cas. Co.*, 411 F.2d 843, 845 (1st Cir. 1969) ("When, on default of the contractor [a surety] pays all the bills of the job to date and completes the job, it stands in the shoes of the contractor *insofar as there are receivables due it.*") (emphasis added); *Am. Cas. Co. of Reading, Pa. v. Line Materials Indus.*, 332 F.2d 393, 395 (10th Cir. 1964) (stating "the rights of subrogation . . . extend only to the amount of money unpaid on the contract at the time the contractor defaults . . . ."); *In re Union City Contractors*, No. 09-20823, 2010 WL 1226882, *9 (Bankr. W.D.N.Y. March 31, 2010); *Labbe v. Bernard*, 196 Mass. 551, 552 (1907).

[71] *See Pearlman*, 371 U.S. at 135-36; *Aetna Cas. & Sur. Co. v. Harvard Trust Co.*, 344 Mass. 160, 169 (1962).

14

were earned but not yet paid to the contractor.[72]  Moreover, if a party with notice of the surety's rights receives funds from a contract owner, equity requires that the party holds the funds for the surety's benefit.[73]

The Trustee contends that a surety must have already paid on a payment bond or completed the work on a performance bond before it is entitled to subrogate funds.  Courts are divided on this issue.[74]  The Trustee has cited cases in which a court held that a surety was required to make payments or complete performance before it was entitled to subrogate.[75]  Other courts, however, take the position that a surety is entitled to subrogation as soon as the surety incurs a legal obligation, such as when the principal defaults.[76]  Therefore, "when a debtor contractor breaches its contract with a project owner, it precludes the debtor's entitlement to retained funds, and thus these funds are not property of the estate."[77]  I agree with the latter view and hold that a surety is entitled to subrogate funds as soon as it incurs a legal obligation.

Two payments, the Pre-Existing Balance and the September Payment, are at issue in this case.  To the extent either is a progress payment, earned and paid to the Debtor prior to default,

---

[72] *Nat'l Shawmut Bank of Bos.*, 411 F.2d at 848.

[73] *See Labbe v. Bernard*, 196 Mass. at 55.

[74] *See Am. Cas. Co. of Reading, Pa.*, 332 F.2d at 395("there is a clear distinction between the right to subrogation, which exists from the date the bond is executed, and actually being subrogated, which occurs when payments are made upon the principal's default); *Am. Fid. Co. v. Nat'l Bank of Evansville*, 266 F.2d 910, 914 (D.C. Cir. 1959) ( "When a surety . . . makes a payment . . . he is subrogated to the rights . . . to any funds due or to become due under the contract); *but See In re Jones Const.*, 337 B.R. 579, 585 (Bankr. E.D. Va. 2006) ("The court is less concerned with whether payment has yet been made than with [a surety's] obligation to pay claimants").

[75] *See Am. Cas. Co. of Reading, Pa.*, 332 F.2d at 395; *Am. Fid. Co.*, 266 F.2d at 914.

[76] *See In re Jones Const.*, 337 B.R. at 585; *In re V. Pangori & Sons, Inc.*, 53 B.R. 711 (Bankr. E.D. Mich. 1985) ("The right of subrogation arises when the surety becomes obligated to satisfy the debts of its principal.").

[77] *In re Jones Const.*, 337 B.R. at 585 (*citing First Indem. of Am. Ins. Co. v. Modular Structures, Inc. (In re Modular Structures, Inc.)*, 27 F.3d 72 (3d Cir. 1994) and *Tri-City Serv. Dist. v. Pac. Marine Dredging and Constr. (In re Pac. Marine Dredging and Constr.)*, 79 B.R. 924, 929 (Bankr. D. Or. 1987)).

15

ICSP does not have equitable subrogation rights.[78]    The parties agree that the September

Payment was made on September 17, 2013.  They agree that a default occurred on September 18,

2013.  They do not, however, agree that September 18, 2013, was the first date a default

occurred.  The Defendants claim that ICSP began receiving payment bond claims with increasing

frequency in 2011 and through 2012 and 2013.  The Defendants state that these claims indicate

the Debtor defaulted on its contracts for the Bonded Projects well before the Debtor filed its

petition for bankruptcy.  The Trustee, on the other hand, claims the Debtors did not default until

at least September 12, 2013.[79]  No contracts between the Debtor and the contract owners or other

documents that would allow the court to determine whether the Debtor defaulted have been

submitted as part of the record.  Thus, a genuine issue of material fact as to whether ICSP or the

Trustee has the right to the Pre-Existing Balance and September Payment remains. The

Defendant's entitlement to the funds through equitable subrogation must be determined at trial.

    2. Assignment

    The Defendants claim that the Indemnity Agreement included an assignment provision

giving ICSP an ownership interest in the funds paid to the Debtor by the contract owners.

    The Indemnity Agreement included the following language:

        The Principals, the Indemnitors hereby consenting, will assign, transfer and set
        over, and do hereby assign, transfer, and set over to the Surety, as collateral, to
        secure the obligations in any and all of paragraphs of this Agreement . . .(a) All of
        the rights of the Principals in, and growing in any manner out of, all contracts
        referred to in the Bonds, or in, or growing in any manner out of the Bonds; . . . (e)
        Any and all percentages retained and any and all sums that may be due or
        hereafter become due on account of any and all contracts referred to in the Bonds

---

[78] *See Nat'l Shawmut Bank of Bos.*, 411 F.2d at 845; *Am. Cas. Co of Reading, Pa.*, 332 F.2d at 395; *In re Union City Contractors*, 2010 WL 1226882, at *9; *Labbe*, 196 Mass. at 552.

[79] Response to ICSP Statement of Facts, Docket No. 74 at ¶ 11.

and all other contracts whether bonded or not in which the Principal has an interest.[80]

Interpreting the terms of an indemnity agreement is a matter of state law.[81]  "Massachusetts law has recognized, within reason, the right of the parties to a transaction to select the law governing their relationship."[82]  The Indemnity Agreement included a choice of law provision stating "[t]his Agreement shall be interpreted under the laws of the State of New York."[83]

Pursuant to New York law, "[a]n assignment is a transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, or chattel, or other thing."[84]  No particular language is required to create an assignment.[85]  An assignment requires "a completed transfer of the entire interest of the assignor that divests the assignor of all control over the right assigned."[86]  Even so, New York courts have held that "an assignment for security" may be enforceable even though it "does not completely extinguish the assignor's rights in the subject of

---

[80] Exhibit A, Docket No. 43 at 2.

[81] *Rifken v. CapitalSource Fin., LLC (In re Felt Mfg. Co., Inc.)*, 402 B.R. 502, 511 (Bankr. D.N.H. 2009).

[82] *Newburyport Five Cents Sav. Bank v. MacDonald*, 48 Mass. App. Ct. 904, 906 (1999) (*quoting Morris v. Watsco, Inc.*, 385 Mass. 672, 674 (1982)).

[83] Exhibit A, Docket No. 43 at 3.

[84] *Maki v. Stralem (In re Stralem)*, 303 A.D.2d 120, 122 (2003) (quoting *Griffey v. N.Y. Cent. Ins. Co.*, 100 N.Y. 417, 422 (1885)).

[85] *See Rhythm & Hues, Inc. v. Terminal Mktg Co., Inc.*, No. 01 Civ. 4697(DAB) GWG, 2004 WL 941908 at *9 (S.D.N.Y. May 4, 2004).

[86] *Richstone v. Chubb Colonial Life Ins.*, No. 97 CIV. 3481 HB HBP, 1999 WL 287332 at *6 (S.D.N.Y. May 7, 1999).

the assignment."[87]   Courts "recognize as an effective present assignment, a transfer by way of security for . . . default in performance of an independent contract."[88]

The language of the assignment provision in the Indemnity Agreement at issue here is within the parameters of what New York courts have held is an effective assignment.   The provision states that the Debtor "will assign . . . as collateral, to secure the obligations" all of its rights in various property.[89]   The assignments were

> to be become effective as of the date of the bond covering such contract, but only in the event of: (1) any abandonment . . . or of any breach of any contracts referred to in the Bonds or of any breach of any said Bonds; or (2) of any breach of the provisions of any paragraph of this Agreement; or (3) of a default in discharging such other indebtedness or liabilities when due . . . .[90]

Thus, the assignment provision transferred property as security for the potential default of the Debtor on an independent contract, such as its contracts with the DCR and DOT for the Bonded Projects.   The language of the assignment makes it effective as of the date of the bond issued, in the event of default on the contracts.   The assignment includes "any and all percentages retained and any and all sums that may be due or hereafter become due on any and all contracts referred to in the Bonds."[91]   Thus, when the Debtor defaulted on the projects, any sums due to the Debtor under the contracts related to the Bonded Projects were assigned to ICSP.

As described above, the date on which the Debtor defaulted on contracts for the Bonded Projects is in dispute and is a genuine issue of material fact.   Accordingly, at this juncture, I

---

[87] *Nacional Financiera, S.N.C. v. Americom Airlease, Inc.*, 803 F. Supp. 886, 890 (S.D.N.Y. 1992).

[88] *Maloney v. John Hancock Mut. Life Ins. Co.*, 271 F.2d 609, 614 (2d Cir. 1959) (*citing Malone v. Bolstein*, 151 F. Supp. 544 (N.D.N.Y. 1956)).

[89] Exhibit A, Docket No. 43 at 1-2.

[90] *Id*. at 2.

[91] *Id.*

cannot determine whether ICSP has the right to either of the Funds as a result of the assignment provision.

### 3. Constructive Trusts

In Massachusetts, a constructive trust may be imposed on property "to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by fraud or in violation of a fiduciary relation."[92]  ICSP urges me to impose a constructive trust on the Funds and asserts that to do otherwise would unjustly enrich the Debtor. A constructive trust requires not only unjust enrichment, but also fraud or breach of a fiduciary duty.[93]  Moreover, Federal Rule of Civil Procedure 9(b) requires fraud to be pled with particularity.[94]  The Defendants have not alleged that the Debtor or any other party has engaged in fraud.  In what may be an attempt to allege that the Debtor breached a fiduciary duty, the Defendants argue that Mass. Gen. Laws ch. 30 §§ 39F(1)(a) and (c) create a statutory obligation for general contractors, such as the Debtor, to pay subcontractors and suppliers, whose rights to payment a surety may subrogate.[95]  Mass. Gen. Laws ch. 30 § 39F establishes payment procedures between general contractors and public contractors on public work contracts and applies to "every contract awarded pursuant to sections forty-four A to L, inclusive, of chapter one hundred and forty nine."[96]  "Section 44A(2) states quite directly that *every* contract for

---

[92] *Nessralla v. Peck*, 403 Mass. 757, 762 (Mass. 1989) (*quoting Barry v. Covich*, 332 Mass. 338, 342 (1955)); *see also Sullivan v. Rooney*, 404 Mass. 160, 163 (1989) (holding that imposition of a constructive trust requires breach of a fiduciary duty).

[93] *See id.*

[94] Fed. R. Civ. P. 9(b).

[95] *Canter v. Schlager*, 358 Mass. at 794.

[96] Mass. Gen. Laws ch. 30 § 39F.

construction . . . by a public agency shall be awarded in accordance with . . . §§ 44B-44H."[97]

Section 44A(1) defines "public agencies" as including "a department, agency, board, commission, authority, or other instrumentality of the commonwealth . . . ,"[98] such as the DOT and DCR.

Although Mass. Gen. Laws ch. 30 § 39F(1)(a) applies here, it merely obligates agencies to include the following language in contracts with general contractors:

> Forthwith after the general contractor receives payment on account of a periodic estimate, the general contractor shall pay to each subcontractor the amount paid for the labor performed and the materials furnished by that subcontractor . . . .[99]

Mass. Gen. Laws ch. 30 § 39F(1)(c), which the Defendants also point to, requires that

> [e]ach payment made by the awarding authority to the general contractor . . . for the labor performed and the materials furnished by a subcontractor . . . shall be made . . . for the account of that subcontractor.[100]

The Defendants have not cited any cases suggesting Mass. Gen. Laws ch. 30 §§ 39F(1)(a) or (c) creates a fiduciary relationship between a general contractor and its subcontractors or suppliers, nor has the court discovered any such cases. Indeed, bankruptcy courts in this district have held that general contractors do not have a fiduciary duty to subcontractors.[101] In light of the fact that ICSP has not pleaded fraud with particularity or demonstrated that the Debtor breached a fiduciary duty, I find that the Funds are not held in a constructive trust.

---

[97] *Norfolk Elec., Inc. v. Fall River Housing Authority*, 417 Mass. 207, 217 (1994) (emphasis in original).

[98] Mass. Gen. Laws ch. 149 § 44A.

[99] Mass. Gen. Laws ch. 30 § 39F(1)(a).

[100] Mass. Gen. Laws 30 § 39F(1)(c).

[101] *See Green Elec., Inc. v. Burke (In re Burke)*, 354 B.R. 579, 583 (Bankr. D. Mass. 2006) (*citing Hickey v. Thomas G. Gallagher, Inc. (In re H & A Constr.  Co., Inc.)*, 65 B.R. 213, 217 (Bankr. D. Mass. 1986)).

Nevertheless, genuine issues of material fact remain as to whether equitable subrogation or the assignment prevents the Trustee from being entitled to turnover of the Funds. Summary judgment as to 11 U.S.C. § 542(a) is denied for both parties.

C. 11 U.S.C. § 547(b)

The Trustee seeks to avoid the First Transfer, a UCC-1 financing statement that AIC filed on September 16, 2013, and the Second Transfer, a Writ of Attachment ICSP obtained on September 19, 2013. Section 547(b) of the Bankruptcy Code allows a trustee to avoid as a preference certain transfers of a debtor's interest in property.[102] The creation of a lien or security interest constitutes a transfer pursuant to 11 U.S.C. § 101(54).[103] To avoid a transfer pursuant to 11 U.S.C. § 547(b), a trustee must prove, *inter alia*, [104] that the transfer

> (5) enables such creditor to receive more than such creditor would receive if—
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.[105]

It is not possible to determine at this stage if the Defendants would receive more in the bankruptcy proceeding than they would have without the Transfers. Indeed, given that the record does not contain sufficient facts to determine if the Funds are property of the estate in the first place, granting summary judgment to either party on this count would be premature. Therefore, I must deny summary judgment as to the 11 U.S.C. § 547(b) claim.

---

[102] 11 U.S.C. § 547(b).

[103] *Braunstein v. Karger (In re Melon Produce, Inc.)*, 976 F.2d 71, 74-75 (1st Cir. 1992).

[104] None of the parties contest that, if the Funds are property of the estate, the requirements of § 547(b)(1) through (4) are satisfied.

[105] 11 U.S.C. § 547(b)(5).

### D. 11 U.S.C. §§ 550 and 551

Pursuant to 11 U.S.C. § 550, a trustee who avoids a transfer under 11 U.S.C. § 547 may, with some exceptions, "recover . . . the property transferred, or . . . the value of such property, from the initial transferee . . . or any immediate or mediate transferee of such initial transferee."[106]  Section 551 of the Bankruptcy Code automatically "preserve[s] for the benefit of the estate"[107] any transfer avoided under 11 U.S.C. § 547.  Given that I have denied summary judgment on the Trustee's avoidance claim, I must deny summary judgment on her recovery and preservation claims as well.

## V. CONCLUSION

In light of the foregoing, I will enter an order denying the Trustee Motion as to all of her claims and denying the ICSP Motion as to all of its claims.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: April 14, 2015

Counsel Appearing:

     Christopher M. Condon, Murphy & King, P.C., Boston, MA
          for the Chapter 7 Trustee
     Eric H. Loeffler and Bradford R. Carver, Hinshaw & Culbertson, Boston, MA
          for the Defendants

---

[106] 11 U.S.C. § 550(a).

[107] 11 U.S.C. § 551.

22